## DURHAM v. HARTSON et al.

### No. 8438.

Court of Civil Appeals of Texas. Austin.

April 21, 1937.

Felts, Wheeler & Wheeler, of Austin, for plaintiff in error.

Robert B. Thrasher, of Austin, for defendants in error.

McCLENDON, Chief Justice.

This suit was brought by Ottie Hartson and others against Durham to recover $320 alleged to have been collected for plaintiffs and converted to his own use by Durham. The trial was to a jury on special issues, and the judgment was in favor of plaintiffs for $195, apportioned $97.50 to Miss Hartson and $48.75 each to her two sisters. No statement of facts was filed, and the only question the appeal (by writ of error) presents is the sufficiency of plaintiffs' petition to support recovery.

Plaintiffs' petition alleges substantially:

Miss Hartson was the owner of two and the other plaintiffs were owners of two notes of $500 each secured by vendor's lien upon real estate. November 19, 1932, Miss Hartson made a contract with Durham, the terms of which were embodied in a letter of that date addressed to Miss Hartson and signed by Durham, reading:

"This acknowledges the receipt of four notes in the principal sum of $500 each. Said notes executed by Fritz Hughes. Said notes being delivered to me by you for collection and it is understood between you and I that you will cooperate with me.

"I will use my very best efforts to collect these notes without foreclosure or court proceedings in any manner, and it is understood between you and I that I am to receive the accrued interest on the notes for the years of 1931 and 1932 and I am to collect the principal sum and deliver the same to you and I will accept these notes for collection with the distinct understanding that I am not to receive any commission other than the interest on the notes and that you are not to be out any cash on the collection of these notes and that I am not to receive any cash until I have collected it off of the maker of the notes of the security securing the notes."

About February 1, 1933, Durham collected from Hughes $320, being the 1931 and 1932 interest on the four notes, which he retained and still retains. "Durham has failed to carry out his contract and agreement and has converted the aforementioned $320 * · * * and has failed and refused to pay this amount to the plaintiffs, or any part thereof."

The fourth paragraph of the petition around which the controversy centers, reads:

"That on the 19th day of November, 1932, the said defendant, J. S. Durham, was Local Agent at Austin, Travis County, Texas for The Federal Land Bank of Houston and at that time and continuously up to the 14th day of April, 1934, the defendant, J. S. Durham, has been Secretary-Treasurer of the Local National Farm Loan Association; that the said Fritz Hughes made application to The Federal Land Bank of Houston to refinance the indebtedness evidenced by the aforementioned notes, which said application was later approved for the sum of Twenty-two Hundred Dollars ($2200.00) and approval notice was accepted by the said Fritz Hughes, and on or about the 15th day of March, 1934, said loan with The Federal Land Bank of Houston and Farm Credit Administrator was closed and funds aggregating approximately Twenty-two Hundred Dollars ($2200.00) were delivered to the plaintiffs in satisfaction of the said aforementioned notes; that at the time said application of Fritz Hughes was made to The Federal Land Bank of Houston for a loan the said defendant, J. S. Durham, was an agent and employee of The Federal Land Bank of Houston, and at the time the loan was closed the said defendant, J. S. Durham, was an agent and employee of The Federal Land Bank of Houston; that at the time application for such loan was made to The Federal Land Bank of Houston and at the time the loan was closed the said Fritz Hughes paid to the defendant J. S. Durham, fees in cash to the said J. S. Durham as his compensation or commission in securing the loan with The Federal Land Bank of Houston."

It was also alleged that Miss Hartson did not have authority to bind her coplaintiffs; but this feature of the case is immaterial under the conclusion we have reached.

Durham's version of the transaction as disclosed by his answer, and in so far as material, is substantially as follows:

One or more of the notes would have been barred by limitation the following January, and Miss Hartson employed him "to collect interest on said notes and to refinance the same or to put the same in such shape that the same would not be barred by the statute of limitations." For his services he was to receive the 1931–32 interest. That he "in every way performed his duty"; brought about payment of taxes on the security, procured payment of the interest, and "later on procured the entire re-financing of said notes and the full amount thereof was paid to the plaintiff, Ottie Hartson." At the time the notes were delivered to him, one of the notes was almost four years past-due and would be shortly barred by limitation, in order to prevent which he employed counsel and filed suit upon the notes; after which negotiations of settlement were consummated "whereby the maker of said notes paid the taxes * * * paid all costs and attorney's fees incident to said suit, and paid the interest on said notes and executed in lieu of the principal sum of the notes, to-wit, $2000, his renewal note for $2000, which was accepted by the said Ottie Hartson and all persons at interest, if any, in lieu of cash, with the understanding upon the part of this Defendant that when said notes were finally financed no further fee would be charged against the Plaintiff, Ottie Hartson, or any other of the persons owning an interest in said notes, if any; and that thereafter said notes were financed through the Federal Land Bank at Houston, and the Plaintiff, Ottie Hartson, and those at interest with her, if any, received the entire amount to which they were entitled, to-wit, the sum of $2000, plus accrued interest on the renewal notes in the approximate sum of $200, making a total of $2,200; and that the said Plaintiff, Ottie Hartson, and the co-plaintiffs herein have all received all the money they were entitled to; and that this defendant is not indebted to the Plaintiff, Ottie Hartson, or to any of the co-plaintiffs in this suit in any sum whatsoever."

"Plaintiff, Ottie Hartson, consented to and instructed the filing of the suit for the purpose of preventing said notes being barred by the statute of limitations; and after the suit was filed consented to the renewal of the same, and agreed to the payment of the $320 as a fee for the services of this Defendant, and agreed to accept the new notes in lieu of the cash, after the payment of taxes on said land and the payment of the interest on said notes; and that thereafter

this Defendant assisted in procuring the refinancing of said loan, and that the Plaintiff, Ottie Hartson, and all the plaintiffs herein, each and all received the full amount of the money they were entitled to; that the same was paid to the Plaintiff, Ottie Hartson, who was the agent and trustee for her co-plaintiffs herein, and that none of the plaintiffs herein have any cause of action against this defendant."

Paragraph 8 of the answer reads:

"Answering further herein this Defendant says that if said services had not been performed as and when the same were performed by this Defendant, Plaintiffs would have lost all, or a portion of the value of said notes because the same, or some of said notes, would have been barred by the statute of limitations, and that said services were services that were reasonably worth the sum paid to this Defendant, and that Plaintiffs have no right to complain."

The questions submitted to the jury and their answers were:

"1. Did the defendant J. S. Durham have reason to believe that Ottie Hartson was authorized to enter into an agreement with him for collection of all of the notes turned over to him?" Answer: "No."

"2. Did Ottie Hartson release defendant J. S. Durham from the contract when she accepted renewal notes and endorsed check over to him?" Answer: "No."

"3. What amount of money, if any, are plaintiffs entitled to recover from defendant and which plaintiffs are entitled to recover same and how much each?" Answer: "$195.00. Ottie Hartson $97.50; Mrs. C. M. Shelton $48.75; Mrs. P. L. Stanford $48.75."

█ We interpret plaintiffs' petition as asserting written contract under which Durham was to get the $320 interest for his services on condition that he collect the entire amount of the notes in cash from Hughes "without foreclosure or court proceedings in any manner"; that he did not perform that contract; and that his retention of the interest collected by him amounted to a conversion. The parties had the right to make such contract, if they chose; the condition was mutually binding; and to be entitled to the agreed compensation Durham must show that he met the condition.

█ The fourth paragraph of the petition was not essential to plaintiffs' asserted cause of action, and is unimportant unless, as Durham claims, it shows compliance on his part and therefore negatives plaintiffs' right of recovery. It is clear, we think, that it has not that effect. It is there alleged that whatever services Durham performed in connection with the refinancing of the notes was as agent of Hughes and the Federal Bank, one or both, and that Hughes paid him a fee for his services. The paragraph was probably inserted to forestall any claim of Durham that he had substantially complied with his contract through refinancing the loan. The allegations of the paragraph clearly negative such substantial compliance.

Passing to the answer of Durham:

█ His version of the contract's terms is wholly at variance with the express terms of the written contract signed by himself. He did not deny under oath, as the law requires, the execution of that contract; but even if he had we must presume in support of the judgment, absent a statement of facts, that the contract was proved as plaintiffs alleged.

His allegations of employment of counsel and settlement of the suit, with consent of plaintiffs, seem clearly referable to the second jury finding, which negatives any allegation on his part that any services of his in this regard were performed under the contract.

█ Under paragraph 8 of his answer, he asserted the right to retain the interest, not under the contract, but as upon quantum meruit. Upon this theory the reasonable value of his services, not the contract amount, would measure his right to compensation. It will be noted that the amount of plaintiffs' recovery was fixed at $195, or $125 less than the petition alleges and his answer admits he collected and retained. The only explanation of this discrepancy which is deducible from the record is that the jury allowed him $125 as compensation for whatever services he performed for plaintiffs. No objection was made by any of the parties to the issues submitted to the jury; and presumptively they embraced the controlling controverted fact issues within the allegations of the pleadings and under the evidence.

We conclude that the pleadings were sufficient to support the judgment, and it is affirmed.

Affirmed.